# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 10-025 (JRT/JJG) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Robin Lynn Bourgeois, | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

The above-captioned case came before the undersigned for a pretrial motion hearing on March 18, 2010. Clifford Wardlaw appeared on behalf of the Government. Reynaldo Aligada, Jr. appeared on behalf of Defendant Robin Lynn Bourgeois. This case was referred to this Court for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

Two dispositive motions are presently before the Court: Defendant's motion to suppress statements and Defendant's motion to suppress evidence seized pursuant to two search warrants. For the reasons set forth below, the Court recommends that both motions be denied.

## I.     MOTION TO SUPPRESS STATEMENTS

Defendant moves to suppress two statements. He made the first statement on October 22, 2009, during an interview with two law enforcement officers. The second statement was made on November 17, 2009, at the time of his arrest.

A.  Facts

In June 2009, Maple Grove Police Detective Jason Heilman received a report from an alleged victim's mother that Defendant had sexually abused a nine-year-old girl. After some investigation, Heilman and Federal Bureau of Investigation (FBI) Agent Joseph Malhoit traveled to Blue Springs, Missouri, to interview Defendant. The interview occurred on October 22, 2009, at Defendant's sister's home, where he was living at the time.

The interview began in the living room. Heilman and Malhoit were casually dressed, and Heilman recalled that their weapons were concealed underneath their jackets. Heilman told Defendant that he did not have to answer any questions and could ask the officers to leave at any time. Heilman also told Defendant he was not under arrest. A few minutes into the interview, Defendant's sister asked if the interview could be relocated to Defendant's living quarters in the basement, in consideration of other family members in the house.

Once in the basement, Heilman and Malhoit sat together on a couch, and Defendant sat on a chair to their right, a few feet away. Defendant was not handcuffed, and his freedom of movement was not restricted in any way. When his telephone rang, he answered it. Heilman and Malhoit ended the interview after approximately two hours. Defendant was not arrested.

About a month later, Defendant traveled to Minnesota to attend to a matter in family court. He was arrested in Minneapolis at the courthouse on November 17, 2009. Defendant expressed some concern about his truck, which he had parked in a ramp, and Heilman said he would give the keys to Defendant's brother so that he could move it.

B.  Discussion

The Fifth Amendment privilege against self-incrimination requires a police officer to advise a person of his *Miranda* rights before interrogating him in a custodial setting. *Illinois v.*

*Perkins*, 496 U.S. 292, 296 (1992). As to the interview on October 22, 2009, there is no dispute that Defendant was interrogated and that he was not advised of his *Miranda* rights. Thus, the question is whether the interview was conducted in a custodial setting.

In making this determination, the Court considers the totality of the circumstances surrounding the interview and whether a reasonable person in Defendant's position would have felt free to end the questioning and leave. *See United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)). The Eighth Circuit Court of Appeals has enumerated several indicia of custody to aid courts in assessing an individual's custodial status:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990).

In the present case, Defendant was informed at the beginning of the interrogation that his participation was voluntary, that he was not under arrest, and that he could ask the officers to leave at any time. Although he was not told that he could leave, this omission is easily explained by the fact that the interview occurred in the place he was residing, and he would be unlikely to depart while the officers remained there.

As for the subsequent factors, Defendant willingly spoke with the officers, and his movement was not restrained during the interview. Although the interrogation was moved to Defendant's living quarters, it was at his sister's request. Defendant freely suspended the

questioning to take a telephone call. No coercive or deceptive tactics were employed, and the atmosphere was not dominated by the two officers. Heilman and Malhoit did not display their weapons, place Defendant between them, or otherwise attempt to control Defendant during the interview. Defendant was not arrested once questioning ceased.

Defendant has not identified any other factors relevant to the determination of custody. Having considered all of the circumstances of the October 22, 2009 interview, the Court concludes that a reasonable person in Defendant's position would not have felt restrained to the degree associated with a formal arrest. Accordingly, his statement should not be suppressed.

With respect to Defendant's expression of concern for his truck at the time of his arrest on November 17, 2009, the element of interrogation is lacking. There was no testimony that any officer engaged in any "express questioning or its functional equivalent." *See Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). Moreover, even if an officer had asked Defendant about his truck or how he had arrived at court that day, such a question would not have been "reasonably likely to elicit an incriminating response" from Defendant. *See id.* at 301. Consequently, the statement made on November 17th should not be suppressed.

## II. MOTION TO SUPPRESS EVIDENCE

Defendant seeks to suppress evidence seized from his mother's home at 4052 Lake Road, Robbinsdale, Minnesota, and from his 2005 Chevrolet Tahoe. The evidence was seized pursuant to two search warrants, both of which were supported by an affidavit sworn by Malhoit, and issued on November 19, 2009. Defendant argues that the warrants lacked probable cause, lacked particularity, and were based on stale information.

## A. Facts Averred in Malhoit's Affidavit

Malhoit is assigned to an FBI unit that investigates crimes involving the sexual exploitation of children. He has been an FBI agent for more than ten years.

On July 31, 2007, Defendant drove a nine-year-old girl, B.R., from Virginia Beach to Covington, Virginia, where the two spent the night at a motel. B.R. was a friend of Defendant's daughter, A.B. The next day, Defendant drove B.R. to another motel in Rockford, Illinois, where they spent the night. The following day, Defendant drove B.R. to his home in Maple Grove, Minnesota. According to B.R.'s mother, Defendant had told her that A.B. would also be making the trip. B.R.'s mother later learned, however, that A.B. had actually traveled to Minnesota two weeks earlier.

Almost two years later, in June 2009, B.R. told her mother that Defendant had touched her in a sexual manner several times during the trip, including at his home in Maple Grove. B.R.'s mother reported this information to the Maple Grove Police Department, which commenced a joint investigation with the FBI. During interviews with a child abuse investigator in June and September of 2009, B.R. said that Defendant had undressed her and touched her vagina when she spent the night with A.B. in Virginia. B.R. also said that Defendant had undressed her and licked and touched her vagina several times after that in Minnesota.

Defendant's children, A.B. and J.B., told the interviewer that Defendant had given B.R. a bath and dried her with a towel. A.B. and J.B. also said that Defendant would sleep between A.B. and B.R. during sleepovers, and once, had stood over B.R. as she lay naked on a bed. Defendant's ex-wife, R.B., told an interviewer that Defendant had admitted to having a crush on B.R. and had given her back rubs and talked to her in a sexual manner. R.B. also said that Defendant had taken photographs of B.R. wearing a bikini and posing in a sexual manner while

5

she washed his truck. R.B. told the FBI that Defendant used computers to look at pornography, and she thought she had seen a book of child pornography in his possession several years before.

Malhoit and Heilman traveled to Blue Springs, Missouri, in October 2009 to interview Defendant. During the interview, Defendant admitted that he had driven B.R. from Virginia to Minnesota and had stayed with her in motels. He also admitted he had dried her after a bath and had taken photographs of her washing his truck on her hands and knees. Defendant said he had often given "rubs and tickles" to B.R. when she spent the night at his house, but claimed both he and B.R. had remained clothed.

In November 2009, Defendant traveled from Missouri to Minnesota to attend to a matter in family court. He had previously told Malhoit he would be staying at his mother's home in Robbinsdale, Minnesota, during the trip. Defendant was arrested on November 17, 2009, while in Minneapolis for his court date. Defendant told the arresting officer that his truck was parked in a nearby ramp, and asked if the keys could be given to his brother. Malhoit verified that the truck was a 2005 black Chevrolet Tahoe, registered in Defendant's name.

Defendant's brother was interviewed at the Maple Grove Police Department later that day, after he had removed Defendant's truck from the parking ramp. He said a laptop computer was on the passenger seat. When asked what he thought was on the computer, Defendant's brother said Defendant had collected quite a bit of pornography over several years and used the computer constantly.

**B.     The Issuance and Execution of the Search Warrants**

Based on Malhoit's affidavit, two search warrants were issued: one for the Tahoe and one for Defendant's mother's home at 4052 Lake Road, Robbinsdale, Minnesota. The warrants were signed on November 19, 2009. A list of items to be seized was attached to each warrant and

included items such as laptop computers, passports and travel documents, photographs of potential victims, cell phones, cameras, film, memory cards, computer media such as hardware and software, computer storage media, and child pornography. An addendum to the search warrant required law enforcement officers to use reasonable efforts to avoid searching computer files and information not identified in the warrant.

Items seized during the subsequent searches of the Tahoe and 4052 Lake Road included a computer, a thumb drive, a storage disk, a computer cable and other parts, a map, a camera, a passport, travel documents, and a cell phone. The property receipt shows that the computer was seized from the home, not the Tahoe.

### C. Staleness

Defendant argues that the information in the affidavit supporting the warrants was stale because the alleged sexual abuse occurred in 2007, two years before the warrants were issued. Staleness is an element of probable cause.

Probable cause exists for the issuance of a warrant when the totality of circumstances described in a supporting affidavit create "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Facts averred in an affidavit "must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past." *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993) (quoted in *United States v. Palega*, 556 F.3d 709, 715 (8th Cir. 2009)). The passage of time is not the only factor, however. Other considerations include the nature of the offense and the type of property to be seized. *United States v. Rugh*, 968 F.2d 750, 754 (8th Cir. 1992). The

7

issuing judge's determination of probable cause must be given "considerable deference." *Palega*, 556 F.3d at 714.

In this case, Defendant was being investigated for aggravated sexual abuse of a child under the age of twelve. Although the alleged abuse occurred in 2007, B.R. did not tell her mother until June 2009. The two-year period between the alleged sexual abuse and B.R.'s report does not necessarily render the information in the warrant stale, as Defendant suggests. If that were the case, no warrant could ever be issued to obtain evidence of a crime that had occurred years before.

Under the circumstances of this case, it is necessary to also consider the efforts of law enforcement after learning of the possible sexual abuse. Heilman and Malhoit began investigating Defendant in June 2009, immediately after receiving the report from B.R.'s mother. The FBI interviewed B.R., Defendant's ex-wife, and Defendant's children between June and September of 2009, regarding Defendant's interactions with B.R. In late October 2009, Defendant confirmed during an interview that he had taken photographs of B.R. washing his truck on her hands and knees while she was wearing a bikini. Malhoit also learned in October 2009 that Defendant would be traveling to Minnesota and staying at his mother's home. Malhoit learned of Defendant's laptop computer on November 17, 2009, during a conversation with Defendant's brother, who also said that Defendant collected pornography and used his computer constantly. The information obtained by Heilman and Malhoit during their investigation in 2009 freshened probable cause to believe that evidence of sexual abuse would be found in the items listed on the attachment to the warrant.

Because the passage of time is not the only factor, the Court now turns to the nature of the offense under investigation and the type of property to be searched. The offense under

investigation was aggravated sexual abuse of a child under the age of twelve. Although Defendant did not admit in his October 2009 interview that he sexually abused B.R., he did admit that he took suggestive photographs of her. Evidence of this nature is not likely to be destroyed. *See United States v. Jakobetz*, 955 F.2d 786, 804 (2d Cir. 1992) (recognizing that perpetrators of sexual abuse often keep evidence of their crimes). Thus, it was reasonable for Heilman and Malhoit to assume that Defendant had retained the photographs or other evidence pertaining to offense under investigation. The listed items to be searched were primarily limited to computers, media storage devices, cameras, and cell phones, all of which could have contained photographs of B.R. taken by Defendant.

The totality of the circumstances also created a fair probability that child pornography would be found on Defendant's computer. Although the Court would typically expect an affiant to link the sexual abuse of minors with the collection of child pornography, based on the affiant's training and experience, this connection may be inferred from the facts in the affidavit.

In *United States v. Hansel*, the Eighth Circuit found that probable cause existed to believe that an individual possessed child pornography based on an affidavit detailing the individual's possession of child erotica, allegations of sexual abuse by two minor girls, the presence of computer and camera equipment in the individual's home, and photographs of the alleged victims wearing swimsuits. 524 F.3d 841, 846 (8th Cir. 2008). Malhoit's affidavit recounted comparable facts: a minor child had reported being sexually abused by Defendant; Defendant's children had confirmed much of the alleged victim's report; Defendant had taken provocative photographs of the girl; Defendant's ex-wife may have seen a book containing child pornography in his possession several years before; Defendant had accumulated a large collection of pornography; and Defendant frequently used his computer to look at pornography.

Defendant attacks each of these averments in isolation, but the Court's duty is to evaluate the circumstances taken as a whole.

Based on the totality of the circumstances described in Malhoit's affidavit, the Court concludes it was reasonable to believe that evidence of child pornography could be located on Defendant's computer. Furthermore, because child pornography is often retained for a long time, *see United States v. Lemon*, 590 F.3d 612, 614-15 (8th Cir. 2010), any such material on Defendant's computer could date back to 2007.

Having considered the length of time between the alleged sexual abuse and the issuance of the warrant, the freshening effect of the investigation in 2009, the nature of the offense being investigated, and the specific property to be searched, the Court concludes that the information in Malhoit's affidavit was not stale.

### D. Probable Cause

Defendant argues that probable cause is also lacking because Malhoit did not explain the basis for his belief that the Tahoe, the residence at 4052 Lake Road, or the computer would contain evidence of the offense under investigation. As discussed above, the totality of the circumstances established probable cause to believe that evidence of aggravated sexual abuse would be found on Defendant's computer or other devices itemized in the attachment to the warrant. The computer's connection to the Tahoe is evident; the computer was located on the passenger seat of the vehicle on November 17, 2009, the day of Defendant's arrest. The computer is linked to 4052 Lake Road because Defendant was staying there while he was in Minnesota, and the very nature of a laptop computer is that it can be transported from place to place, such as from a vehicle to a residence. Although it would have been preferable for the

supporting affidavit to have included these details, their absence does not preclude a finding of probable cause.

Defendant next argues that the affidavit does not establish that he owned the computer in 2007. Even if this is true, photographic images can easily be transferred from a device such as a camera to a computer. And, as discussed above, the affidavit also established probable cause to believe that child pornography obtained after 2007 could be located on the computer.

Defendant's final challenge to probable cause is the affidavit's inclusion of a statement by his ex-wife that she thought Defendant had possessed a book of child pornography years ago. The time differential does not concern the Court because possessors of child pornography often retain their materials for a long time, *see United States v. Lemon*, 590 F.3d 612, 614-15 (8th Cir. 2010). As to the somewhat conditional nature of the statement, the Court agrees that, standing alone, the statement would not provide probable cause. However, the statement is properly considered as one component of the totality of the circumstances, and the Court has given the statement the weight it is due considering its qualified nature.

### E. Particularity

Defendant argues that the warrants did not limit the search of his computer to evidence of specific crimes or to specific types of material, and thus, evidence obtained from the computer should be suppressed. The Fourth Amendment requires a search warrant to describe with particularity the items to be seized. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). The purpose of this requirement is to prevent "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). Nevertheless, "[t]he requirement of particularity must be assessed in terms of practicality." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007).

The warrant in *Summage* authorized the seizure of "all" videotapes, DVDs, pornography, recording equipment, camera equipment, and computers. *Id.* at 1077. The warrant did not further specify the items to be seized, even though the police knew they were looking for a video and photographs of a sexual encounter. *Id.* at 1077, 1079-80. Nor did the affidavit name the specific crimes under investigation. *Id.* at 1078. Despite this lack of specificity, the court found the warrant sufficiently particular. *Id.* at 1080.

The warrants in the present case were at least as particular as the warrant in *Summage*. Although the list of items to be seized named the general category of "laptop computers," the list also included specific items such as "photographs of possible victims" and "child pornography" which served to particularize the more general items. The seizure of the entire laptop computer was permissible because it is not practical to perform an on-site search of a computer. *See id.* at 1079. Furthermore, the addendum to the warrant required officers who searched the computer to use reasonable efforts to avoid searching files and information not identified in the warrant, and Defendant does not argue that any extraneous material was actually seized. Accordingly, the Court concludes that the warrants were sufficiently particular, and evidence obtained from the computer should not be suppressed.

### F. The *Leon* Good Faith Exception

Even if Malhoit's affidavit lacked probable cause, the evidence seized pursuant to the warrants would be admissible under *United States v. Leon*, 468 U.S. 897 (1984), because the executing officers relied in good faith on the warrants.

A court must not suppress evidence where "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 920. This good faith exception to the exclusionary rule applies unless (1) the issuing judge "was

misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) the issuing judge "wholly abandoned his judicial role;" (3) the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;'" or (4) the warrant is "so facially deficient-*i.e.*, in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid." *Id.* at 923 (citations and quotation omitted).

None of these situations are applicable here. There is no evidence whatsoever that the issuing judge was misled by false information or abandoned the judicial role. The affidavit was not so deficient that an executing officer's belief in the existence of probable cause would have been entirely unreasonable. Nor was the warrant so facially imprecise that an executing officer could not have presumed it valid.

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure (Doc. No. 29) be **DENIED**; and
2. Defendant's Motion to Suppress Statements (Doc. No. 30) be **DENIED**.

Dated: March 26, 2010                              s/ *Jeanne J. Graham*

JEANNE J. GRAHAM
United States Magistrate Judge

**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **April 12, 2010**. A party may respond to the objections within ten days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the district judge is not required to review a transcript or if the district judge directs otherwise.