<pre>
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MINNESOTA
</pre>

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 10-25 (JRT/JJG) |
| Plaintiff, | |
| v. | **ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| ROBIN LYNN BOURGEOIS, | |
| Defendant. | |

Clifford B. Wardlaw, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Reynaldo A. Aligada, Jr., Assistant Federal Public Defender, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for defendant.

On November 16, 2009, the United States filed a criminal complaint against defendant Robin Lynn Bourgeois, alleging that Bourgeois "cross[ed] a state line with intent to engage in a sexual act with [a person] . . . who had not attained the age of twelve years." (Compl. at 1, Docket No. 1.) An indictment filed on February 2, 2010, charged Bourgeois with a single count of aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(c) and 2246(2). On February 26, 2010, Bourgeois filed motions to suppress statements that he made to law enforcement and to suppress evidence obtained pursuant to searches of Bourgeois' mother's home and Bourgeois' vehicle. On March 26, 2010, United States Magistrate Judge Jeanne J. Graham filed a Report and Recommendation

recommending that the Court deny Bourgeois' motions, and Bourgeois filed timely objections. After *de novo* review of those portions of the Report and Recommendation to which Bourgeois objects, *see* 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.2, the Court overrules the objections and adopts the Report and Recommendation for the reasons set forth below.

## BACKGROUND[1]

Bourgeois seeks to suppress evidence seized from his mother's home at 4052 Lake Road, Robbinsdale, Minnesota and from his 2005 Chevrolet Tahoe. The evidence was seized pursuant to the execution of two search warrants, which were supported by the affidavit of Federal Bureau of Investigation ("FBI") Special Agent Joseph Malhoit (the "Malhoit Affidavit"). (*See* Malhoit Aff. ¶ 1, Docket Nos. 8 and 10.) Malhoit has been employed by the FBI since 1999 and is assigned to a squad that investigates violent crime, including the sexual exploitation of children. (*Id.*)

Malhoit asserted that on July 31, 2007, Bourgeois began traveling from Virginia Beach, Virginia to his home in Maple Grove, Minnesota with a nine-year-old girl, B.R. (*Id.* ¶ 3.) B.R. was a friend of Bourgeois' daughter, A.B. (*Id.*) Bourgeois and B.R. first traveled to Covington, Virginia, where they spent the night at a motel. (*Id.*) On August 1, 2007, Bourgeois and B.R. drove from Covington to Rockford, Illinois, where

---

[1] The Court recites the facts only to the extent necessary to rule on Bourgeois' specific objections to the Report and Recommendation. For reasons outlined further below, the Court does not describe facts relating to the merits of Bourgeois' general objection to the motion to suppress statements. The Magistrate Judge's Report and Recommendation describes facts pertinent to that issue. (*See* Report and Recommendation at 2, Docket No. 40.)

they stayed together overnight in a Motel 6.  (*Id.*)  On August 2, 2007, Bourgeois and B.R. drove from Rockford to Bourgeois' home in Maple Grove, Minnesota.  (*Id.*)  In an interview with law enforcement, B.R.'s mother, R.V., stated that Bourgeois told her that B.R. would be traveling with Bourgeois and his daughter, A.B.  (*Id.*)  However, A.B. had traveled to Minnesota two weeks before Bourgeois and B.R. departed on their trip.  (*Id.*)

Almost two years later, in June 2009, B.R. told R.V., that Bourgeois touched her in a sexual manner in 2007 in Virginia Beach, during the three-day trip to Maple Grove, and at Bourgeois' home in Maple Grove.  (*Id.* ¶ 4.)  R.V. reported the incidents to the Maple Grove Police Department ("MGPD"), which, with the FBI, immediately commenced an investigation.  (*Id.* ¶ 5.)  In June and September 2009, a child abuse investigator interviewed B.R.  B.R. told the investigator about various types of sexual contact that Bourgeois had with her.  (*Id.* ¶ 6.)  B.R. stated that when she spent the night at A.B.'s home in Virginia Beach, Bourgeois would come into the bedroom after A.B. was asleep and "tuck her in" by undressing B.R. and touching her vagina.  (*Id.*)  B.R. stated that after she and Bourgeois arrived in Maple Grove, Bourgeois came down to the basement where she was sleeping, removed her clothes, touched her vagina with his hands, and began to lick her vagina.  (*Id.*)  B.R. asked Bourgeois to stop, but he did not listen to her.  (*Id.*)  B.R. stated that this happened several more times while she was staying in Minnesota.  (*Id.*)

During the investigation, law enforcement also interviewed Bourgeois' children.  (*Id.* ¶ 7.)  A.B., Bourgeois' thirteen-year-old daughter, "stated that her dad liked [B.R.] a lot," and said that she saw Bourgeois give B.R. a bath and had her lie on his bed while he

dried her off. (*Id.*) A.B. stated that when B.R. was staying in Minnesota, Bourgeois would come down to the basement and sleep between A.B. and B.R. (*Id.*) J.B., Bourgeois' eight-year-old son, stated that he saw Bourgeois give B.R. a bath, and then saw B.R. on Bourgeois' bed naked, "with [Bourgeois] standing over the top of [B.R.] on the side of the bed. . . . [and B.R.] was on her back, with her legs open a little." (*Id.*) J.B. stated that B.R. was wearing socks, but nothing else. (*Id.*)

R.B., Bourgeois' ex-wife, stated in her interview that Bourgeois admitted to her in 2007 that he had a crush on B.R. and stated that she had seen Bourgeois give B.R. back rubs and talk to B.R. in a sexual manner. (*Id.* ¶ 8.) R.B. also stated that while B.R. was in Maple Grove, Bourgeois had B.R. put on a bikini and "wash his truck while he photographed her doing sexy poses." (*Id.*) In May 2008, R.B. told the FBI that Bourgeois "was into building computers and that he utilized computers to look at pornography." (*Id.* ¶ 15.) R.B. also "noted that several years ago she thought she saw a book of child pornography. . . . [but] she could not remember specifically what ma[d]e her think it was child pornography." (*Id.*)

On October 22, 2009, Malhoit and MGPD Detective Jason Heilman interviewed Bourgeois at his sister Tanya Alvarez's home in Blue Springs, Missouri, where Bourgeois lived in the basement. (*Id.* ¶ 10.) Bourgeois confirmed in his interview that he drove B.R. from Virginia to Minnesota by himself and stayed at motels during the trip. (*Id.*) Bourgeois claimed that B.R.'s mother knew he and B.R. would be traveling alone. (*Id.*) Bourgeois stated that although he had dried B.R. off after she took a bath, he had kept a towel around her body. (*Id.*) Bourgeois admitted that he had taken a photograph

of B.R. while she was posing on her hands and knees while washing his truck. (*Id.*) Bourgeois also admitted that he would give "rubs and tickles to his two sons and [B.R.]. . . . [but] he noted that he would go to the sides of [B.R.]'s buttocks and not over the top of it." (*Id.*) Bourgeois said he had been wearing red boxer shorts and no shirt when he gave "rubs and tickles." (*Id.*) Bourgeois "maintained that he never touched BR in an inappropriate or sexual way." (*Id.*)

On November 17, 2009, the FBI arrested Bourgeois while he was in Minneapolis, Minnesota for a family court hearing. (*Id.* ¶ 12.) Prior to the date of his arrest, Bourgeois had informed Malhoit that he would be traveling from his sister's home in Blue Springs, Missouri to Minneapolis, Minnesota, and would be spending the night before his court date at his mother's home in Robbinsdale, Minnesota. (*Id.*) When he was arrested at the courthouse, Bourgeois informed officers that he had parked his vehicle – which Malhoit later verified as a 2005 Chevrolet Tahoe (the "Tahoe") registered in Bourgeois' name – in a parking ramp across the street from the courthouse. (*Id.*) Bourgeois requested that his brother, J.B., "be given the keys and asked to take care of it." (*Id.*) On the same date, Heilman interviewed J.B., who informed Heilman that there was a laptop computer on the passenger seat of the Tahoe when J.B. picked it up. (*Id.* ¶ 13.) When asked about the computer, J.B. noted that Bourgeois "had quite a collection of pornography over the years and that [Bourgeois] is always on the computer." (*Id.*) J.B. also told investigators that Bourgeois' girlfriend had told J.B. that Bourgeois "showers with her daughter out of love." (*Id.* ¶ 9.)

On November 19, 2009, based on the Malhoit Affidavit, a magistrate judge signed and issued two search warrants: one for Bourgeois' Tahoe and one for Bourgeois' mother's home at 4052 Lake Road, Robbinsdale, MN 55422. (*See generally id.*) A "List of Items to Be Seized" was attached to each warrant, and included "Laptop computers;" "documents indicating travel by Robin Bourgeois"; "photographs of possible victims;" "cell phones including memory cards;" "cameras, film, including any media memory cards;" "computer media, including all hardware and software, and storage media formats;" and "child pornography." (*Id.*) A "Search Warrant Addendum" cautioned law enforcement to "make reasonable efforts to utilize computer search methodology that avoids searching files, documents or other electronically stored information which is not identified in the warrant." (*Id.*) Pursuant to the execution of those warrants, law enforcement seized from Bourgeois' mother's home a passport, a computer disk, a small note book, a "card," a cell phone, and a "computer (Laptop) w/ Accessories Including cables, power cord, thumb drive, And [sic] memory card." (*See* Docket No. 9.) Law enforcement seized from the Tahoe a computer cable, a "home made map," computer parts, camera, air card, passport, and "Travel Documents."[2] (*See* Docket No. 11.)

On March 26, 2010, Bourgeois filed a motion to suppress statements he made to Malhoit and Heilman in the interview that took place in Missouri. (*See* Mot. to Suppress

---

[2] As the Magistrate Judge noted in the Report and Recommendation, "[t]he property receipt shows that the computer was seized from the home, not the Tahoe." (Report and Recommendation at 7, Docket No. 40.) The property receipts for the items seized under the separate search warrants – which were both returned executed on November 24, 2009 – however, also both stated that a "passport" was seized. Although not clear, there appears to be some overlap in the reporting of items that were seized pursuant to the separate warrants.

Statements, Docket No. 30.) Bourgeois also filed a motion to suppress physical evidence obtained pursuant to the search warrant of his mother's home and his vehicle, and the search of the laptop computer and hard drives. (*See* Mot. to Suppress Fruits of Unlawful Search & Seizure at 1, Docket No. 29.) Bourgeois argued that the evidence should be suppressed because the Malhoit Affidavit did not support a finding of probable cause. (Mem. in Supp. of Mot. to Suppress Fruits of Unlawful Search & Seizure at 2, Docket No. 35.) Bourgeois argued that the information contained in the Malhoit Affidavit about B.R.'s trip from Virginia Beach to Maple Grove was stale; that there was insufficient evidence in the affidavit to support a finding that there was probable cause to believe that evidence of a crime would be found in the home, on the computer, or in the Tahoe; that the warrants lacked particularity; and that the "*Leon* good-faith exception does not save the search." (*See generally id.*)

The Magistrate Judge filed a Report and Recommendation recommending that the Court deny Bourgeois' motions. With respect to the motion to suppress evidence, the Magistrate Judge concluded that the information obtained by investigators in 2009 "freshened probable cause to believe that evidence of [the 2007] sexual abuse would be found in the items listed on the attachment to the warrant." (Report and Recommendation at 8, Docket No. 40.) The Magistrate Judge also concluded that there was sufficient information supporting a finding of probable cause and that the warrants adequately described with particularity the items to be seized. (*Id.* at 10-12.) Finally, the Magistrate Judge concluded that even if the warrants lacked probable cause, the good-faith exception delineated in *United States v. Leon*, 468 U.S. 897 (1984), applied and the

evidence should not be suppressed. (*Id.* at 13.) The Magistrate Judge also recommended that the Court deny the motion to suppress statements. (*Id.* at 4.) Bourgeois filed timely objections to the Report and Recommendation. (*See* Objections, Docket No. 42.)

**DISCUSSION**

**I.      MOTION TO SUPPRESS EVIDENCE**

Bourgeois objects to the Magistrate Judge's recommendation that that Court deny the motion to suppress evidence, arguing that the Magistrate Judge erred by concluding that the information gathered in the 2009 investigation "freshened" the information from B.R. and her mother about the incidents in 2007; that the warrants were otherwise supported by probable cause; and that the *Leon* good-faith exception applied. (*See generally id.*) The Court addresses each of those arguments in turn.

**A.      Probable Cause**

"The Fourth Amendment safeguards '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures' and mandates that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *United States v. Hessman*, 369 F.3d 1016, 1020 (8th Cir. 2004) (quoting U.S. Const. amend. IV) (alteration in original). "To be valid under the Fourth Amendment, a search warrant must be supported by a showing of probable cause." *United States v. Stults*, 575 F.3d 834, 843 (8th Cir. 2009) (internal quotation marks omitted). "The existence of probable cause depends on whether, in the totality of the

circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (internal quotation marks omitted). Although courts review the issuing magistrate judge's legal determination of probable cause *de novo,* courts nonetheless "accord[] great deference to a magistrate's determination as to whether an affidavit establishes probable cause." *Id.* (internal quotation marks omitted); *see United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009).

### 1. Staleness

"A warrant becomes stale if the information supporting the warrant is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." *United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009) (internal quotation marks omitted). "The date of the occurrence of the facts relied upon in an affidavit is of importance in the determination of probable cause because untimely information may be deemed stale." *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007). "There is no bright-line test for determining when information is stale. . . . Time factors must be examined in the context of a specific case and the nature of the crime under investigation." *Id.* (internal quotation marks omitted; alteration in original). "While the lapse of time involved is an important consideration and may in some cases be controlling, it is not necessarily so. There are other factors to be considered, including the nature of the criminal activity

involved, and the kind of property for which authority to search is sought." *United States v. Ozar*, 50 F.3d 1440, 1446 (8th Cir. 1995); *see also Brewer*, 588 F.3d at 1173.

Bourgeois argues that much of the information contained in the Malhoit affidavit was stale because it was two years old and therefore could not support a probable cause finding. (Objections at 1, Docket No. 42.) Bourgeois also contends that "[t]he legal concept of 'freshening' is a vague doctrine that cannot fairly be a basis to save the warrants in this case." (*Id.* at 2.) The Court disagrees and concludes that the information in the Malhoit Affidavit was not stale merely because it included information that was two years old. Moreover, law enforcement's investigation into B.R.'s claims in 2009 updated, substantiated, and corroborated the information provided by B.R. such that there was probable cause to believe that evidence of sexual abuse could be found in Bourgeois' mother's home, his Tahoe, and Bourgeois' laptop computer.

In these circumstances, the two-year period between the time of the alleged sexual abuse and the time B.R. reported the abuse to her mother does not necessarily render the information stale. As the Magistrate Judge noted, "If that were the case, no warrant could ever be issued to obtain evidence of a crime that had occurred years before." (Report and Recommendation at 8, Docket No. 40.)

Given the nature of the offense and the type of property to be searched, the Court concludes that the information contained in the search warrants was not stale and the search warrants were supported by probable cause. Bourgeois was indicted for aggravated sexual abuse of a child under the age of twelve. Bourgeois did not admit in his interview with the investigator that he sexually abused B.R., but he did state that he

had taken photographs of B.R. in which she was posing suggestively. Such evidence is relevant to the charge against Bourgeois and is not likely to be destroyed. *See United States v. Lemon*, 590 F.3d 612, 614-15 (8th Cir. 2010) ("[T]he lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated.") (internal quotation marks omitted; alteration in original); *United States v. Jakobetz*, 955 F.2d 786, 804 (2d Cir. 1992) (noting that individuals charged with sexual assault often retain evidence of their crimes). The Court agrees with the Magistrate Judge that it "would typically expect an affiant to link the sexual abuse of minors with the collection of child pornography, [but] based on the affiant's training and experience, this connection may be inferred from the facts in the affidavit." (Report and Recommendation at 9, Docket No. 40.)

To the extent that B.R.'s initial allegations related to stale information, that information did not undermine the issuing magistrate judge's probable cause finding. The FBI and MGPD's investigation and discussions with Bourgeois' family members served to "update[], substantiate[], or corroborate[] the stale material." *See United States v. Bucuvalas*, 970 F.2d 937, 940 (1st Cir. 1992), *abrogated on other grounds by Cleveland v. United States*, 531 U.S. 12 (2000); *see also United States v. Hansel*, 524 F.3d 841, 846 (8th Cir. 2008).

Immediately after B.R.'s mother reported Bourgeois' alleged sexual assault, the FBI and the MGPD began investigating Bourgeois' conduct. During that investigation, a child abuse investigator interviewed B.R. directly and B.R. described in detail the alleged incidents of sex abuse in Virginia Beach, on the three-day trip to Minnesota, and at

Bourgeois' home in Maple Grove. (Malhoit Aff. ¶ 6, Docket Nos. 8, 10.) The FBI and MGPD also interviewed Bourgeois' children, who independently confirmed some of the events related by B.R. (*Id.* ¶ 7.) In addition, Bourgeois' wife told investigators that Bourgeois "had BR put on a bikini and wash his truck while he photographed her doing sexy poses." (*Id.* ¶ 8.) Bourgeois confirmed in an October 22, 2009, interview that he had taken "a photograph of BR while she was posing on her hands and knees while washing his truck." (*Id.* ¶ 9.) Bourgeois' brother told investigators that Bourgeois often used his computer to view pornography and that Bourgeois' girlfriend had told J.B. that Bourgeois showered with her daughter. (*Id.* ¶¶ 9, 12.) Further, Bourgeois informed Malhoit that he would be staying at his mother's home in Minnesota and investigators learned that Bourgeois had left his laptop in the Chevy Tahoe at the time he was arrested on November 17, 2009. (*Id.* ¶¶ 12-13.)

### 2. Other Factors Relating to the Finding of Probable Cause

Bourgeois contends that the Malhoit Affidavit is lacking because Malhoit did not indicate whether the photos of B.R. were digital or stored on a computer and because the Malhoit Affidavit did not aver that Bourgeois owned the laptop computer at issue in 2007 when Bourgeois took the suggestive photos of B.R. (Objections at 4, Docket No. 42.) The Court disagrees.

"[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue[.]" *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). Judges "may draw reasonable inferences from the totality of the

circumstances in determining whether probable cause exists to issue a warrant[.]" *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000). The affidavit averred that Bourgeois took suggestive photos of B.R. while B.R. was wearing a bikini; and the affidavit averred that Bourgeois frequently viewed pornography and had a collection of pornography on his computer.³ In addition, the type of evidence linked to the crime – including photos of B.R. – is not likely to be destroyed. *See Jakobetz*, 955 F.2d at 804. "[G]iven all the circumstances set forth in the affidavit . . . , including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there [was] a **fair probability** that contraband or evidence of a crime [would] be found" on computers or media devices in Bourgeois' mother's home and in Bourgeois' vehicle.⁴ *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (emphasis added); *cf. Summage*, 481 F.3d at 1078 ("Given the circumstances here, we think it would be reasonable to infer that Summage would have the video and photographs at his new residence.").

Bourgeois contends that his ex-wife's statement about a book of child pornography is unreliable and cannot be considered as part of the totality of the circumstances. Bourgeois' wife told Malhoit that several years prior to her statement she

---

³ The Court is not persuaded by Bourgeois' argument that the Malhoit Affidavit must have averred that Bourgeois had the laptop computer in 2007. Electronic images are easily transferred from one device to another and the warrant authorized the search of a variety of media formats.

⁴ In addition, the Search Warrant Addendum placed reasonable limits on the search by requiring law enforcement to "make reasonable efforts to utilize computer search methodology that avoid[ed] searching files, documents or other electronically stored information which [was] not identified in the warrant." (Search Warrant Addendum ¶ 1, Docket Nos. 8-10.)

thought she saw a book of child pornography "but could not remember specifically what ma[d]e her think it was child pornography." (Malhoit Aff. ¶ 15, Docket Nos. 8, 10.) The Court agrees with the Magistrate Judge that given the "conditional nature of the statement," the statement alone would not establish probable cause. (Report and Recommendation at 11, Docket No. 40.) The Court also questions whether such a statement could be considered in reviewing validity of the search warrant under the totality of the circumstances, but the Court need not reach that issue. The remaining information in Malhoit's affidavit is adequate to support a finding of probable cause.

The parties argue extensively whether the Eighth Circuit case *United States v. Hansel*, 524 F.3d 841, is relevant to or distinguishable from the instant case. The Court notes that *Hansel* may be distinguishable on its facts, but the Court need not reach the issue of *Hansel*'s probative value. Applying the probable cause standard to the facts of the case, the Malhoit Affidavit provided sufficient information from which the issuing magistrate judge could determine there was probable cause to issue the search warrants.

In short, the Court concludes that the two-year-old information averred by B.R. in the Malhoit Affidavit was not stale and, regardless, the FBI and MGPD's subsequent investigation collected information that updated, substantiated, and corroborated the information initially provided by B.R. The Malhoit Affidavit averred sufficient information from which the issuing Magistrate Judge could conclude there was a fair probability that evidence of sexual abuse would be found in Bourgeois' mother's home, where Bourgeois was staying, and Bourgeois' vehicle, where his brother indicated

Bourgeois had left his laptop computer. Accordingly, the Malhoit Affidavit adequately supported the issuing magistrate judge's probable cause finding.

### B. *Leon* Good-Faith Exception

Under the Fourth Amendment, "[E]vidence obtained as a result of a defective search warrant is generally inadmissible," *United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007), but in *United States v. Leon,* the Supreme Court recognized a good faith exception to the exclusionary rule. 468 U.S. 897, 922 (1984). The Court held that the Fourth Amendment does not require suppression of "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Id.* "The rationale for such an exception is that no justification exists to exclude evidence when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (internal quotation marks omitted). The *Leon* good faith exception does not apply where (1) the issuing judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) "the issuing magistrate wholly abandoned his judicial role;" (3) the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or (4) the warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923 (internal quotation marks omitted).

Bourgeois argues that the *Leon* good faith exception does not apply because "probable cause relies so heavily on stale information which lacks a clear nexus to the places and items to be seized, [and] it was simply unreasonable for a law enforcement office of Agent Malhoit's experience level to rely on the affidavit." (Objections at 8, Docket No. 42.) Bourgeois also contends that the 2009 FBI and MGPD investigation "focused on an offense distinct from the 2007 allegations" and therefore the warrant was so facially deficient that Malhoit, who drafted the affidavit, could not presume it was valid. (*Id.* at 9.)

The search warrant was not "so lacking in indicia or probable cause as to render official belief in its existence entirely unreasonable." Given the totality of the information in the affidavit, the Court cannot conclude that "[a]ny reasonably well-trained officer in the stationhouse shop would recognize as clearly insufficient the affidavit that was presented to the magistrate." *United States v. Zimmerman*, 277 F.3d 426, 437 (3d Cir. 2002) (internal quotation marks omitted). Bourgeois cites *United States v. Zimmerman*, 277 F.3d 426, for the proposition that the good faith exception may not apply "where probable cause as to [the] presence of pornography was six months old and stale." (Objections at 8-9, Docket No. 42.) As Bourgeois has repeatedly argued, however, the government charged Bourgeois with sexual assault of a minor, not with possession of child pornography as in *Zimmerman*. *Zimmerman* is also distinguishable because in that case, the evidence supporting the probable cause finding to search for child and adult pornography was based on a single statement in the affidavit that the defendant had viewed **adult** pornography once six months earlier. *Zimmerman*, 277 F.3d

at 437. The facts averred in the Malhoit Affidavit, however, are more detailed, are based on a variety of sources, and provide a more substantial basis for probable cause relating to Bourgeois' sexual assault charges.

Bourgeois also argues that "where the more recent investigative information is focused on an offense distinct from the 2007 allegations, the warrant is so facially deficient that Agent Malhoit, who drafted the affidavit, could not presume that it is valid." (Objections at 9, Docket No. 42.) The FBI and MGPD investigation, however, did not focus on an offense that was distinct from the 2007 allegations that Bourgeois' sexually abused B.R., such as possession of child pornography. The overwhelming focus of the investigation as recited in the Malhoit Affidavit was on Bourgeois' interactions with B.R. Those activities are the basis for the sexual abuse charges.[5]

Bourgeois has not otherwise demonstrated that the warrant was so facially deficient that the executing officers could not reasonably presume that it was valid.

---

[5] Bourgeois also cites *United States v. Hodson*, 543 F.3d 286, 293-94 (6th Cir. 2008), for the proposition that a "reasonably well-trained officer" would realize that an affidavit supporting probable cause of child molestation did not establish probable cause to search for child pornography. (Objections at 9, Docket No. 42.) *Hodson* is inapposite. In *Hodson*, there were no statements in a challenged search warrant affidavit connecting the alleged child molestation offense to a child pornography offense. *See Hodson*, 543 F.3d at 289 ("Detective Pickrell's exposition of probable cause in the affidavit does not establish, allege, or even suggest any basis for a finding of probable cause to believe that Hodson had ever been involved in child pornography in any manner. Moreover, Detective Pickrell offered no assertion – in either the affidavit or any other evidence (e.g., expert testimony) then before the magistrate judge – of any relational nexus between child molestation and child pornography. Thus, it was and is clear that, in this affidavit, Detective Pickrell established probable cause to search for evidence of one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography).") By contrast, Malhoit averred that Bourgeois had taken suggestive pictures of B.R., linking potential photographic evidence to the charged offense for sexual assault of a minor.

Bourgeois has not demonstrated that Malhoit did not act in good faith to obtain the search warrant or that the Magistrate Judge acted outside the scope of his authority. *See Puckett*, 466 F.3d at 630. Thus, even if the Court concluded that the Malhoit Affidavit did not support a finding of probable cause, the *Leon* good-faith exception applies and the fruits of the executed search warrant should not be suppressed.

## II. MOTION TO SUPPRESS STATEMENTS

In a footnote in his objections, Bourgeois states, "As to the issue of suppression of statements, [Bourgeois] objects to the failure to suppress his statements, and rests on the record." (Objections at 1 n.1, Docket No. 42.) Upon the filing of a Report and Recommendation by a Magistrate Judge, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* F. Minn. LR 72.2(b). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).

With respect to Bourgeois' motion to suppress statements, Bourgeois' does not identify any specific portions of the Magistrate Judge's Report and Recommendation to which he objects, instead stating the he "rests on the record." Thus, Bourgeois has not satisfied the specificity requirement under federal or local rules. The Court therefore adopts the Magistrate Judge's Report and Recommendation and denies Bourgeois' motion to suppress statements.

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** defendant Robin Lynn Bourgeois' objections [Docket No. 42] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated March 26, 2010, [Docket No. 40]. **IT IS HEREBY ORDERED** that:

1. Bourgeois' Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure [Docket No. 29] is **DENIED**.

2. Bourgeois' Motion to Suppress Statements [Docket No. 30] is **DENIED**.

DATED: September 7, 2010
at Minneapolis, Minnesota.

          s/ John R. Tunheim
          JOHN R. TUNHEIM
          United States District Judge